EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARCELINO CUEVAS TOLEDO, acusado y apelante.

*Número:* CR-62-196      *Resuelto:* 3 de octubre de 1963

---

*César Vélez González,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Jenaro Marchand, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El Fiscal del Tribunal Superior de Puerto Rico, Sala de Arecibo, acusó al apelante de un delito de atentado a la vida porque "ilegal, voluntaria, maliciosa y criminalmente, con malicia premeditada y expresa y propósito firme y deliberado de darle muerte, demostrando tener un corazón pervertido y

maligno, acometió y agredió con un tubo de hierro, que es un objeto contundente, con el cual puede producirse grave daño corporal y hasta la muerte a un semejante, al ser humano Manuel Colón González, infiriéndole varias fracturas y heridas en distintas partes de su cuerpo al referido ser humano Manuel Colón González, cuyas fracturas y heridas son de carácter grave". El Jurado rebajó la calificación a un acometimiento y agresión grave y la ilustrada Sala sentenciadora lo condenó a cumplir 13 (trece) meses de cárcel.

En su apelación, el acusado señala tres errores: (1)– El Tribunal sentenciador cometió claro y manifiesto error al intervenir en forma destacada en los interrogatorios directos de la prueba del Pueblo; (2) al no darle crédito a la teoría de defensa propia, la cual surge de la propia prueba del Pueblo; (3) al darle ciertas instrucciones al Jurado.

1– El primer error nos señala la intervención durante los testimonios del perjudicado Manuel Colón González (T.E. pág. 49) y la esposa de éste Hirágida Cuevas, hija del acusado Marcelino Cuevas Toledo (T.E. págs. 65–89).

La primera intervención indebida, según la transcripción es la siguiente:

"INTERROGA EL HON. JUEZ: —
P—¿Usted dijo ahí, a preguntas de uno de los abogados, que ese ojo le lagrimeaba, le lloraba?
R—Anterior de esto nó. Eso está así, el ojo y el oído y éste que no veo y la boca, que cuando me río, no abre nada mas que de un lado.
P—¿Usted dice que por un ojo no vé?
R—Por este ojo no veo.
P—¿Y antes?
R—Antes estaba bien.
P—¿Y por el que echa lágrimas vé?
R—No veo muy bien y antes veía bien.
P—¿Por qué usted se señala el oído?
R—Este, que cada veinticuatro horas, un ruido sonando y no oigo nada por él. Por éste es que oigo.

Hon. Juez: — 'Está bien'.

Lcdo. Velez: — 'Nada'.

Hon. Fiscal: — 'Nada'.

Hon. Juez: — 'Puede retirarse'."

Si se recuerda la obligación del ilustrado Juez que preside el proceso de reseñar la prueba presentada, se puede explicar, en casos como éste, que el magistrado trate de aclarar cuáles fueron las lesiones realmente recibidas.

La segunda intervención indebida, durante el testimonio de la señora Hirágida Cuevas, es la siguiente:

"Interroga el Fiscal: — 'Doña Hirágida. Usted ha dicho aquí a estas damas y caballeros del jurado, que su papá, al regresar de su casa a las seis de la tarde, con su señora mamá, traía este tubo. Que este tubo usted lo conoce porque lo había visto en su casa. Que cuando llegó su papá a casa de Francisco Reboyras, llegó con este tubo y dice usted: —"Traía ese tubo para defenderse'. ¿Se acuerda de eso?'

R—Si señor.

P—¿Cuando dice usted que él lo traía para defenderse, yo le pregunto, ¿Cómo sabe usted que el propósito de él, al él traer ese tubo a las seis de la tarde, era defenderse? ¿Como sabe usted que eso era lo que él tenía en mente; que lo que quería era defenderse?

(La Testigo no Contesta)

Hon. Juez: — 'El le pregunta; quiere que usted le diga que por qué dijo usted que su papá llevaba ese tubo para defenderse'. 'Cómo usted lo sabe'. ¿Qué razón tiene usted para decir que su padre llevaba ese tubo para defenderse?

R—Bueno, yo digo que tenía que ser para defenderse, porque si nos encontrábamos al señor Manuel Colón González, ¿con qué nos iba a defender?.

Hon. Juez: —¿Entonces usted presume que era para defenderse, o se lo dijo él, que era para defenderse de Manuel Colón González?

Testigo: — 'No me lo dijo'.

Hon. Juez: — '¿Se lo dijo a alguien?'

Testigo: — 'Tampoco'.

Hon. Juez:— '¿Cuando usted dijo que era para defenderse, es que usted cree que eso era así?'

R—Si señor."

Posteriormente el ilustrado Juez que preside el proceso vuelve a intervenir con la hija del acusado, esposa del perjudicado, en el siguiente diálogo.

"Interroga el Hon. Juez a la Testigo:—

P—¿Mira jóven. Tú dijiste en tu declaración que allá para el 23, unos días después de venir de San Juan, tú fuiste al Centro de Salud de Utuado. Tú dijiste que habías ido al Centro de Salud o al Hospital?

R—Yo fuí al Hospital.

P—¿O sea, el Centro de Salud y el Hospital, allí es una misma cosa?

R—Lo mismo es.

P—¿Qué médico te trató allí?

R—No recuerdo.

P—¿Cómo era él. No era uno grueso?

R—No señor.

P—¿Sea cual fuere, él te recetó?

R—Si señor.

P—¿Se te quitaron los mareos con la receta de él? ¿Tú no fuiste por unos mareos que te daban?

R—No señor. Mareos no.

Hon. Juez:— 'Está bien'.

Fiscal:— 'Nada'.

Abogado:— 'Nada'.

Hon. Juez:— 'Puedes retirarte'."

Al examinar la estructura hilativa de estas intervenciones dentro del testimonio, se comprende que en las dos ocasiones, el ilustrado Juez que preside el proceso lo que busca es el esclarecimiento de dos hechos, que en ese momento, él considera no han ido con la claridad necesaria a la mente del jurado. Aunque siempre es la mejor práctica dejar que la narración y enumeración de los detalles del suceso surja espontáneamente del interrogatorio fiscal y el interrogatorio de la defensa, cabe dentro de la potestad judicial, cierta in-

tervención discreta para el mejor entendimiento de la prueba, siempre que pueda hacerlo sin que transluzca cualquier estado de ánimo que desvíe el juicio del jurado. Examinadas las dos intervenciones, en el interrogatorio del ilustrado Juez que preside el proceso, las mismas están dentro de los límites fijados por la jurisprudencia a la intervención judicial.

■ 2—El segundo error no tiene fundamento. En sus instrucciones al Jurado, el ilustrado Juez dio un compendio razonable de lo que constituye "defensa propia". En cuanto a la aplicación de dicha eximente a los hechos del caso, no se solicitó, en el momento oportuno, la absolución del acusado por insuficiencia de la prueba o porque los hechos probados no constituían un delito público. Siendo esto así, la dilucidación del hecho que el acusado actuara o no en defensa propia, le competía al Jurado.

■ 3—El acusado apelante objeta como inoportuna y perjudicial la siguiente instrucción o comentario al Jurado:

"Estimo, damas y caballeros del Jurado, que cuadra la siguiente circunstancia. El padre, mientras no llegue a su mayoridad ella, tiene la patria potestad, el control y dirección y es responsable, ante Dios siempre es responsable el padre, pero por la Ley, hasta los veintiun años de edad nada mas. Ahora, alcanza su [sic] patria potestad (mayoridad) antes de los veintiun años, cuando el padre emancipa a su hijo o se emancipa por contraer matrimonio. E Hirágida se casó, cumplidos los dieciocho años. Luego, obligación de Ley:—'La mujer seguirá a su marido donde quiera que éste establezca su residencia' y el marido empeñado que se fuera. La muchacha que es una muchachita joven y ha tenido la bendición de Dios y la naturaleza, de presencia simpática, además de la simpatía natural de la juventud, pero ella no se quería ir y él bregaba por llevársela. Fue a la casa y dice el perjudicado, 'se formó una disputa antes de la fecha de estos hechos, antes del 26 y se fueron a las manos'. Ese día volvió a buscar a su mujer y entonces surgen estos hechos que dice Colón. Que este señor, Marcelino Cuevas Toledo, sin ser atacado por él, sin que se hubiera iniciado una pelea, le pegó con ese tubo que presentó el señor Fiscal, primeramente para describirlo e identi-

ficarlo y después lo presentó como evidencia. Con ese tubo le dió por aquí y por aquí y en el codo, en los codos."

Esta anotación marginal de las relaciones jurídicas entre padre e hija y marido y mujer, la hace el ilustrado Juez al reseñar la prueba que se presentó durante el proceso, tal vez buscando una forma más viva de explicar el móvil. La afirmación que la obligación de un padre de proteger a su hija, de acuerdo con la Ley de Dios, no termina nunca, tal vez resulte mas beneficiosa que perjudicial al acusado puesto que apela a un sentimiento de una gran vigencia emotiva en nuestra patria. Lo otro es un débil alarde retórico que si bien no aviva las savias del estilo, tampoco las marchita de un todo. En cualquier caso en el cual la declaración de culpabilidad hubiera resultado extrema, quizás nos detendríamos un poco a medir el posible perjuicio que hubiera podido causársele al acusado.

Lo malo en este caso, es que la santa ira del padre le propina una golpiza soberana al perjudicado, algo que no guarda relación con el prudente temor y la cantidad de castigo que autoriza la "defensa propia".

*Debe confirmarse la sentencia apelada.*